IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

D.M., by and through his next
friend C.M.,

        Plaintiff,

   v.

OREGON SCHOLASTIC ACTIVITIES
ASSOCIATION,

        Defendant.

Civ. No. 6:22-cv-01228-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff D.M. is a 17-year-old student beginning his senior year of high school in Eugene School District 4J. Compl. ¶ 5, ECF No. 1. Defendant Oregon Scholastic Activities Association ("OSAA") regulates organized school activities for all member school districts, including Eugene School District 4J. *Id.* ¶¶ 2, 4. Plaintiff alleges Defendant violated the Americans with Disabilities Act ("ADA") when it denied him a fifth-year exemption to play sports for his final year of high school. *Id.* ¶¶ 34–42. Plaintiff moved for an emergency temporary restraining order, arguing that absent injunctive relief, he faces the likelihood of irreparable harm as the school football season began on August 26, 2022. Mot. TRO 15–16, ECF No. 5. Because Plaintiff has not shown a likelihood of success on the merits, Plaintiff's Motion for Emergency Temporary Restraining Order, ECF No. 5, is DENIED.

1 – OPINION AND ORDER

**BACKGROUND**

Plaintiff suffered a tragedy when his older brother died by suicide in 2017. Compl. ¶¶ 12, 19. Plaintiff was in sixth grade at the time, and the loss significantly affected his mental health. *Id.* ¶¶ 11–12. Plaintiff is diagnosed with the following conditions: Major Depressive Disorder; Post-Traumatic Stress Disorder; Persistent Complex Bereavement with emotional and behavioral dysregulation; Attention Deficit/Hyperactivity Disorder combined presentation – Severe; Attachment-Related Disorder: disorganized reaction to caregivers and insecure interpersonal attachment; Parent-Child Relational Problem; and Academic or Educational Problems. *Id.* ¶ 5.

Following his brother's death, Plaintiff's middle school agreed to combine Plaintiff's seventh and eighth grade years so he could sooner attend Marist Catholic High School where another brother was enrolled. *Id.* ¶¶ 10, 12. Plaintiff completed two years, the ninth and tenth grade, at Marist. *Id.* ¶¶ 13, 19. Still struggling with his mental health, Plaintiff's mother enrolled him at Triumph Youth Services, a residential treatment program, where he repeated the tenth grade. *Id.* For his eleventh-grade year, and fourth year of high school due to his year spent at Triumph, Plaintiff enrolled in the Eugene School District. *Id.* ¶ 19. Plaintiff is now entering the twelfth grade and his fifth year of high school in the Eugene School District. *Id.*

The present dispute arises from Plaintiff's request to compete in school sports for his fifth and final year of high school. Defendant has a policy that limits students to participating in sports for four consecutive years (eight semesters) after entering ninth grade (hereinafter "the eight-semester rule"). *Id.* ¶ 8. The purpose of this policy is to encourage graduation within four years, prevent "redshirting" to gain a competitive advantage, and ensure fair and safe competition between schools and individual students. OSAA Handbook 34.[1] An exception to the eight-

---

[1] Available at https://www.osaa.org/docs/handbooks/osaahandbook.pdf.

semester rule exists by way of a fifth-year hardship appeal. Compl. ¶ 9. The exception details a few situations in which the OSAA Executive Board may allow a fifth-year student an extra year of eligibility to participate in sports. OSAA Handbook 34–35, Rule 8.2.4.

The relevant situation here includes a student whose Individualized Education Program ("IEP") Team determines that the student has a disability and was meeting the requirements of his IEP but was unable to graduate within eight semesters primarily because of his disability. *Id.* at 35, Rule 8.2.4(b)(1). The student must also establish that his participation would not constitute an undue risk to the health or safety of other participants. *Id.*, Rule 8.2.4(c). For purposes of this rule, "disability" is defined by the Individuals with Disabilities Education Act ("IDEA"), which provides that a "child with a disability" has one or more of an enumerated list of impairments requiring "special education or related services." *Id.* at 35; 20 U.S.C. § 1401(3)(A).

Upon his enrollment in 2021, the Eugene School District implemented a Section 504 plan for Plaintiff, stating he is "a student with identified disabilities that substantially limit his ability to self-regulate his emotions, perform attention-related tasks, and complete activities requiring strong skills in executive function." Compl. ¶ 22. Plaintiff's accommodations under his 504 plan include allowing fewer assignments with additional time for completion, modeling approaches to organizing information, and permitting breaks for emotional regulation. Sherman Decl. Ex. 1, at 119–20, ECF No. 6-1. Plaintiff does not, however, have an IEP. An evaluation team determined that an IDEA evaluation for special education eligibility was unnecessary as "existing data [sufficiently] rule[d] out a suspicion of any educational disability that may require special education at this time." *Id.* at 121. The team agreed that Plaintiff's stress and anxiety "could be effectively addressed via general education supports that have been, and remain, available" to

Plaintiff. *Id.* The team further noted that Plaintiff "never exhibited concerning behavior . . . in the academic setting." *Id.*

Plaintiff's high school submitted a fifth-year eligibility waiver request to Defendant in May of 2022, which was denied the following month. Compl. ¶ 23. The denial noted that Plaintiff did not meet the criteria for a fifth-year hardship waiver under Rule 8.2.4. Sherman Decl. Ex. 2, at 2–3. Plaintiff appealed the denial and, following a hearing, his appeal was denied. Compl. ¶¶ 25–26. The appeal denial noted the "fundamental differences between a student with a 504 plan and a student with an IEP; in particular, an IEP is only created if a team of identified experts concludes that an IEP is warranted." Sherman Decl. Ex. 3, at 2. The appeal denial also indicated that Plaintiff's time at Triumph Academy was a "choice" and that allowing Plaintiff "to participate in contests as a fifth-year student would be taking a roster spot from an otherwise eligible student." *Id.* OSAA's handbook confirms that a student who does not have an IEP but is on a 504 plan does not meet the criteria for a fifth-year hardship waiver. OSAA Handbook 36.

As a result of Defendant's decision, Plaintiff is unable to participate in high school football games during his final year of high school, though he can still practice with the team. Compl. ¶¶ 23–24. His inability to compete in games severely affects Plaintiff's mental health. *Id.* ¶¶ 29–33. Following his brother's death, the football program provided necessary support for Plaintiff's mental health and academic progress. *Id.* ¶ 32. Plaintiff's football coach believes that Plaintiff "needs football more than football needs [Plaintiff]" and worries that Plaintiff "will go backward in his progress" with school if he is unable to have a normal senior year. *Id.* ¶ 31.

## STANDARD

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish such harm is likely. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The Court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## DISCUSSION

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To succeed on his Title II claim, Plaintiff must show (1) he is a qualified individual with a disability, (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of his disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Public entities include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(b).

"[F]ailure to provide [a] reasonable accommodation can constitute discrimination." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017) (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). Plaintiff must demonstrate "the existence of a reasonable

accommodation" that would enable him to participate in the activity at issue. *Pierce v. County of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008) (quoting *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999)). The burden then shifts to Defendant to show that the modification would require a fundamental alteration or pose an undue hardship on the entity. *Id.* (citing 28 C.F.R. § 35.150(a)(3)). The reasonableness determination is a fact-specific, case-by-case inquiry based on the disabled individual's circumstances and the accommodations sought. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999).

Plaintiff argues that Defendant failed to provide a reasonable accommodation when it denied his fifth-year eligibility waiver request. Mot. TRO 12. In support of this notion, Plaintiff cites to *Bingham v. Or. Sch. Activities Ass'n (Bingham I)*, 24 F. Supp. 2d 1110 (D. Or. 1998), *vacated in part as moot*, 20 F. App'x 720 (9th Cir. 2001) and *Bingham v. Or. Sch. Activities Ass'n (Bingham II)*, 37 F. Supp. 2d 1189 (D. Or. 1999), *vacated in part as moot*, 20 F. App'x 720 (9th Cir. 2001). In *Bingham I*, Magistrate Judge Coffin granted preliminary injunctive relief after finding that a waiver of the OSAA eight-semester eligibility rule was a reasonable accommodation for a fifth-year student who repeated a grade due to his disability. 24 F. Supp. 2d at 1116. The court found that the OSAA made exceptions for fifth-year seniors to participate in athletics under a variety of circumstances, including where a student similarly situated to Mr. Bingham was granted a waiver despite having exceeded eight semesters of eligibility. *Id.* The court further found that Mr. Bingham's participation would not frustrate the purpose underlying the eight-semester rule. *Id.*

Following a bench trial, the court issued an order further elaborating on these issues in *Bingham II*. There, OSAA argued that allowing an exception to the eight-semester rule based on a student's disability was not a reasonable accommodation. 37 F. Supp. 2d at 1196. In finding

otherwise, the court pointed out that two of OSAA's other eligibility rules included express exceptions for students with learning disabilities who were under an IEP. *Id.* at 1198–99. The court further noted that OSAA's other eligibility rules invoked the same purposes of the eight-semester rule. *Id.* at 1201. Taken together, the court could not "reconcile the exceptions grafted into the grade and age rules for the learning disabled with the failure of OSAA to grant a similar exception to the eight semester rule." *Id.*

Although factually similar, a few key distinctions exist between *Bingham* and the present case. In *Bingham II*, the court found that because OSAA included express exceptions for learning disabled students with IEPs in its other eligibility rules, there was no rational reason for OSAA not to include a similar exception for the eight-semester eligibility rule. *Id.* Because Mr. Bingham had an IEP, OSAA's failure to include a similar exception to the eight-semester rule arbitrarily precluded him from obtaining a waiver. By contrast, after rewriting its eight-semester rule, Defendant now provides an express exception to the eight-semester rule for disabled students with an IEP.² But unlike Mr. Bingham, Plaintiff here fails to meet the criteria for the exception because he does not have an IEP. A team of evaluators found that an IEP was unnecessary for Plaintiff after ruling out "a suspicion of any educational disability that may require special education" and determining that Plaintiff's impairments are sufficiently addressed through general educational supports. Sherman Decl. Ex. 1, at 121.

Even with the express exception for learning disabled students, Plaintiff contests Defendant's eight-semester rule, arguing that Defendant "improperly requires a student to be eligible for an IEP under the IDEA in order for [Defendant] to grant a reasonable accommodation." Mot. TRO 12. Plaintiff asserts that no rational basis exists for the distinction

---

² *See Bingham v. Or. Sch. Activities Ass'n (Bingham III)*, 60 F. Supp. 2d 1062 (D. Or. 1999).

7 – OPINION AND ORDER

between students with a disability under the ADA and those with a disability under the IDEA. *Id.* at 14. But Defendant provides the exact reason for the distinction, which the Court agrees is rational:

> An IEP requires that professionals evaluate a student to determine that the student is disabled for the purposes of the Individuals with Disabilities Education Act (IDEA) while Section 504 of the Rehabilitation Act provides a low-barrier mechanism for students to receive some special services or accommodations. Although some of the same purposes underlie Section 504 and the IDEA, the significant difference between the two statues [sic] means that the requirement under Rule 8.2.4(b)(1) is applicable only to students with an IEP, not to students with a 504 Plan.

OSAA Handbook 36.

Plaintiff maintains that because Defendant grants fifth-year eligibility waivers for disabled students with an IEP, it cannot claim that granting a waiver for a disabled student under the ADA is unreasonable. Plaintiff ignores the fundamental difference between the criteria for obtaining an IEP and a 504 plan, as explained by Defendant above. Further, Plaintiff offers no authority to support his argument that the ADA necessitates eligibility waivers for any student with a 504 plan as a reasonable accommodation, especially where Defendant already provides an express exception for students with disabilities. Plaintiff instead relies exclusively on *Bingham*, a case that is factually distinct from the present situation and not binding on this Court.[3] In sum, the Court is unconvinced that Defendant excluded or discriminated against Plaintiff by failing to provide a reasonable accommodation.

Because it appears that no discrimination on the basis of disability occurred, Plaintiff failed to meet his burden in showing a likelihood of success on the merits of his ADA claim.

---

[3] Additionally, the Ninth Circuit vacated Magistrate Judge Coffin's preliminary injunction as moot. *See Bingham v. Ediger*, 20 F. App'x 720 (9th Cir. 2001).

8 – OPINION AND ORDER

Accordingly, Plaintiff's Motion for Emergency Temporary Restraining Order, ECF No. 5, is DENIED.

IT IS SO ORDERED.

DATED this 9th day of September, 2022.

                                          _____/s/ Michael McShane_____
                                             **Michael J. McShane**
                                          **United States District Judge**