IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

D.M.,

        Plaintiff,

    v.

OREGON SCHOOL ACTIVITIES ASSOCIATION,

        Defendant.

Case No. 6:22-cv-01228-MC

AMENDED OPINION AND ORDER

**MCSHANE, Judge:**

      Today, the Court considers whether Defendant Oregon School Activities Association ("OSAA") violated the Americans with Disabilities Act ("ADA") and Oregon state law when it denied Plaintiff D.M. a fifth-year hardship waiver to play football during his final year of high school. The Court previously denied Plaintiff's Motion for Emergency Temporary Restraining Order and Motion for Preliminary Injunction, finding in both cases that Plaintiff did not show a likelihood of success on the merits. Op. & Order ("TRO Order"), ECF No. 12; Op. & Order ("Prelim. Inj. Order"), ECF No. 27. Defendant now moves for summary judgment. ECF No. 59. Because no reasonable jury could conclude that Plaintiff's requested accommodation was reasonable or that Plaintiff was discriminated against by reason of his disability, Defendant's Motion is GRANTED.

1 – OPINION AND ORDER

**BACKGROUND**

When this lawsuit commenced in August 2022, Plaintiff was a 17-year-old student on the cusp of his twelfth-grade year at Sheldon High School in Eugene School District 4J. Brague Decl. Ex. 5, at 1, ECF No. 78. The trajectory of his young life has already presented him with significant obstacles to overcome, most notably those arising from his adoption from an Ethiopian orphanage at the age of four. *Id*. Since then, Plaintiff has been diagnosed with several mental-health disabilities including depression, post-traumatic stress disorder (PTSD), oppositional defiance disorder (ODD), and attention-deficit hyperactivity disorder (ADHD). Brague Decl. Ex. 22, at 6.

Despite Plaintiff's behavioral problems, he has found solace and success on the football field. Brague Decl. Ex. 14, at 26–29. Football served as a motivational force for his academic performance and his involvement in athletic teams provided Plaintiff with a positive social structure where he felt competent. Brague Decl. Ex. 5, at 1.

This action centers around Plaintiff's request for an exemption from Defendant's "eight-semester rule"—a policy generally restricting a student's eligibility for participation in interscholastic activities to eight consecutive semesters (equivalent to four years) after the student enters the ninth grade. Brague Decl. Ex. 19, at 43–44. Defendant's rationale for implementing this rule is to ensure that a student's educational performance aligns with graduation requirements and to maintain fair competition between schools and individual students. Brague Decl. Ex. 3, at 25. Defendant's policy is not unique to Oregon; regulatory bodies overseeing high school athletic programs across various states enforce similar age limitations. *See e.g. Pritchard v. Florida High Sch. Athletic Ass'n, Inc.*, Case No: 2:19-cv-94-FTM-29MRM, 2019 WL 1993511, at *1 (M.D. Fla. May 6, 2019) (Florida and four-year policy); *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 290 F. Supp. 3d 187, 190 (W.D.N.Y. 2017) (New York and four-year policy); *Lyon v.*

2 – OPINION AND ORDER

*Illinois High Sch. Ass'n*, No. 13 C 173, 2013 WL 309205, at *2 (N.D. Ill. Jan. 25, 2013) (Illinois and eight-semester policy). As explained below, Defendant's policy provides express exceptions to the eight-semester rule and sets forth a procedure for students seeking a fifth-year hardship policy appeal. Brague Decl. Ex. 19, at 43–44.

Plaintiff's eight-semester 'clock' began when he early-enrolled as a ninth-grade student at Marist High School in August 2018. Brague Decl. Ex. 11, at 1. The preceding year, Plaintiff suffered a tragedy when his older brother died by suicide in 2017. Brague Decl. Ex. 5, at 3. Plaintiff's mother ("C.M.") and middle school agreed to consolidate Plaintiff's seventh and eighth-grade years to expedite his enrollment at Marist, where another brother was already enrolled. *Id.* Unfortunately, Plaintiff's academic, social, and behavioral challenges exacerbated during the two years he attended Marist. *Id.*

In the summer of 2020, C.M. made the choice to enroll Plaintiff at Triumph Academy, a residential high school in Utah. *Id.* Although Plaintiff describes Triumph as "a residential mental health treatment program[,]" Plaintiff took classes as a tenth-grade student and earned academic credit for completing coursework. Brague Decl. Ex. 6, at 1. Following the academic year at Triumph, C.M. enrolled Plaintiff as an eleventh-grade student at Sheldon High School in Eugene, Oregon. *Id.* Assuming he passed his classes, Plaintiff would have graduated at the conclusion of the 2022–2023 academic year. Brague Decl. Ex. 11, at 1.

Because Plaintiff entered the ninth grade in August of 2018, his athletic eligibility under the eight-semester rule expired following the 2021–2022 school year. *Id.* On May 12, 2022, Plaintiff submitted a fifth-year hardship appeal to Defendant, requesting a waiver of the eight-semester rule due to his disabilities. Brague Decl. Ex. 25, at 2. As a general policy, Defendant does not provide exceptions to the fifth-year waiver criteria for students with individual disabilities

3 – OPINION AND ORDER

under the ADA who do not have an Individualized Education Plan (IEP). Brague Decl. Ex. 3, at 39. Consequently, Defendant denied Plaintiff's request. *Id*. at 41.

Plaintiff filed this lawsuit in August 2022, asserting that Defendant violated the ADA and Oregon state law by denying him a fifth-year hardship waiver to participate in football during his final year of high school. First Am. Compl. ¶¶ 41, 53, 60, ECF No. 24. The Court previously denied Plaintiff's motions for a temporary restraining order and preliminary injunction, finding that Plaintiff had not demonstrated a likelihood of success on the merits in both cases. Prelim. Inj. Order 1. Defendant now moves for summary judgment.

As Plaintiff has since graduated, any requests for injunctive relief are now moot. However, Plaintiff's ADA claim, which seeks to establish the eight-semester rule as a violation of the ADA, remains pending before the Court. Plaintiff seeks an order from the Court to require Defendant to amend its rules, permitting the filing of a request for a fifth-year eligibility waiver for any students with disabilities as defined by either the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act, and/or the ADA. First Am. Compl. 14. Plaintiff's state law claims seeking monetary damages are also pending before the Court.

## STANDARDS

The court must grant summary judgment if the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt*

4 – OPINION AND ORDER

*v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Title II of the ADA prohibits disability discrimination as it relates to public services. The statute specifically provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under Title II, "[a] public entity shall make reasonable accommodations to policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of a disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 § C.F.R. 35.130(b)(7)(i).

To succeed on a Title II claim, a plaintiff must show that: (1) he is a qualified individual with a disability, (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of his disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). The "failure to provide [a] reasonable accommodation can constitute discrimination." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017) (cleaned up). However, the ADA does not mandate that a public entity fulfill every accommodation requested by a disabled individual; instead, it only mandates reasonable accommodations. *Selene v. Legislature of Idaho*, 514 F. Supp. 3d 1243, 1256 (D. Idaho 2021) (citing *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002)).

5 – OPINION AND ORDER

For the purposes of this Order, the Court will assume without deciding that Plaintiff sufficiently established he is a qualified individual with a disability under the ADA, and that Defendant is a public entity subject to Title II. Plaintiff's failure to discriminate claim therefore rests his ability to establish: (1) that it would not fundamentally alter the nature of Defendant's eight-semester rule to waive the rule for all students with a qualifying disability under the ADA; and (2) the existence of a causal connection between his disabilities and subsequent ineligibility to play sports. Defendant argues Plaintiff cannot establish either element. The Court will address these issues in turn.

## I.     Reasonableness of Plaintiff's Requested Accommodation

Plaintiff contends that Defendant failed to provide a reasonable accommodation when it denied his fifth-year eligibility waiver request. In ADA cases, the plaintiff bears the burden of establishing the existence of a reasonable accommodation that would enable him to participate in the service or activity at issue. *Doscher v. Timberland Reg'l Libr.*, No. 3:22-cv-05340-RJB, 2022 WL 17667907, at *4 (W.D. Wash. Dec. 14, 2022), *appeal dismissed* (Jan. 6, 2023) (quoting *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008)). The reasonableness of a proposed accommodation "depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to enjoy meaningful access to the program." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). The burden then shifts to the defendant to show that the modification would require a fundamental alteration or pose an undue hardship on the entity. *Pierce*, 526 F.3d at 1217 (citing 28 C.F.R. § 35.150(a)(3)).

Defendant requires students seeking a waiver to the eight-semester rule to establish one of three enumerated circumstances "to the reasonable satisfaction of the Executive Board or the Executive Director:"

1. That the student's [IEP] Team has determined that the student has a disability [pursuant to the IDEA] and that the student was meeting the requirements of the student's IEP, yet was unable to graduate from high school within eight semesters after entering the 9th grade primarily because of the disability; or
2. Due to circumstances beyond the control of each of the student and the student's parent(s), there has been both a significant absence from school (not less than one semester) and an inability to obtain academic credit during that period of absence; or
3. That the student . . . was unable to graduate high school within eight semesters after entering the 9th grade primarily due to their lack of English language ability[.]

Brague Decl. Ex. 19, at 44. Defendant maintains that its eight-semester rule "is designed to promote academic progression, . . . as well as fair and safe competition among participants by maintaining equality in eligibility[.]" Def.'s Mot. for Summ. J. 30. The exceptions "focus on whether the student is able to academically progress (earn credits) and thereby graduate in four years." *Id.* at 31.

Defendant contends that it denied Plaintiff's fifth-year waiver request on the grounds that Plaintiff did not fulfill any qualifying circumstance. Brague Decl. Ex. 3, at 41. This decision was supported by evidence presented in the record. As relevant here, Plaintiff did not have an IEP, consistently earned academic credit throughout his high school career, and failed to provide evidence of any English language deficiencies. *Id.* at 43–44.

In response, Plaintiff argues that a waiver of the eight-semester rule constitutes a reasonable accommodation considering his disabilities. Pl.'s Mem. in Opp'n to Mot. for Summ. J. ("Pl.'s Resp. MSJ") 12, ECF No. 74. Framing this within the context of his Title II claim, Plaintiff

7 – OPINION AND ORDER

...

asserts that a blanket fifth-year waiver should be permissible for any student with an ADA-qualifying disability, provided the student can establish some connection between the disabilities and the necessity for an additional year of high school.

During Plaintiff's initial motion for injunctive relief in 2022, the Court determined that Plaintiff's requested accommodation was unreasonable given the facts of this case and Defendant's purpose behind its eight-semester rule. Prelim. Order. 7. Despite this ruling, Plaintiff persists in arguing that Defendant "improperly requires a student to be eligible for an IEP under the [IDEA] in order for [Defendant] to grant a reasonable accommodation." TRO Order 7; Pl.'s Resp. MSJ 36. However, Defendant provides a rationale for distinguishing between students with and without an IEP, which the Court continues to accept as rational:

> An IEP requires that professionals evaluate a student to determine that the student is disabled for the purposes of the Individuals with Disabilities Education Act (IDEA) while Section 504 of the Rehabilitation Act provides a low-barrier mechanism for students to receive some special services or accommodations. Although some of the same purposes underlie Section 504 and the IDEA, the significant difference between the two statues [sic] means that the requirement under Rule 8.2.4(b)(1) is applicable only to students with an IEP, not to students with a 504 Plan.

TRO Order 8; *see* OSAA Handbook 36.

It is unclear how Plaintiff's proposed blanket-waiver comports with the "fact-specific, individualized analy[es]" that distinguishes reasonable accommodations from unreasonable ones. *Mark H.*, 620 F.3d at 1097. Instead, Plaintiff contends that his requested accommodation would not fundamentally alter Defendant's eight-semester rule. Plaintiff argues he "is not materially different than the multiple IDEA-eligible disabled students who [whom Defendant] provided waivers[,]" and Defendant "routinely waives the eight-semester rule for IDEA-eligible disabled students and non-disabled students." Pl.'s Resp. MSJ 33, 35, 36.

As the Court previously explained when it denied Plaintiff's Motion for Preliminary Injunction, multiple circuit courts have already concluded that such a waiver of the eight-semester rule and/or age restriction rule constitutes a fundamental alteration of a high school sports program. Prelim. Inj. Order 7; s*ee McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 461–62 (6th Cir. 1997); *Sandison v. Mich. High Sch. Athletic Ass'n*, 64 F.3d 1026, 1034–35 (6th Cir. 1995); *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 929–31 (8th Cir. 1994). Defendant's eight-semester policy already provides an exception for those students whose disabilities, in accordance with their IEP's, prevented them from graduating in four years. *See* Brague Decl. Ex. 19, at 44. Plaintiff was considered for an IEP on two different occasions, but his IEP team, composed of his teachers and school administers, concluded that he was not a candidate for special education and chose not to implement an IEP. Brague Decl. Ex. 31, at 5. Plaintiff had education success plans at every step of his high school education, and there is no evidence in the to suggest that these academic support systems were insufficient in helping Plaintiff advance towards graduation. *See* Brague Decl. Ex. 25, at 1.

The Court recognizes that summary judgment in ADA claims should be reserved for those limited situations where a reasonable juror simply could not find for a plaintiff. *Wong v. Regents of Univ. of California*, 192 F.3d 807, 821 (9th Cir. 1999), *as amended* (Nov. 19, 1999). Today, the Court finds that this is one of those limited situations. To conclude that a blanket fifth-year hardship waiver for any student with an ADA-qualifying disability would not fundamentally alter the purpose behind Defendant's eight-semester rule, a juror would need to completely disregard the fundamental difference between students who meet the criteria for obtaining an IEP and those who do not. A reasonable juror could not disregard such a material distinction.

9 – OPINION AND ORDER

## II.     Plaintiff's Disabilities Did Not Cause His Ineligibility

Even if Plaintiff could demonstrate that a waiver of the eight-semester rule was a reasonable accommodation, he cannot establish a causal connection between his disabilities and ineligibility under Defendant's eligibility policy. To satisfy Title II's "by reason of" requirement, a plaintiff must demonstrate that the discriminatory action would not have been taken "but for" his disability. *Sabatini v. Nevada State Bd. of Nursing*, Case No. 2:22-cv-00219-GMN-VCF, 2023 WL 4963770, at *3 (D. Nev. Aug. 2, 2023) (internal quotation and citation omitted); *see also Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir. 2019) (applying but-for causation based on Title I's language 'on the basis of disability'); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 566 (2020) ("the ordinary meaning of 'because of' is 'by reason of[.]' In the language of law, this means that Title VII's 'because of' test incorporates the 'simple and 'traditional' standard of but-for causation.") (internal citations and quotations omitted). As applied here, Plaintiff must show that he would have been eligible to participate in school sports but-for his disabilities.

Plaintiff contends that his inability to graduate within eight semesters stemmed from his need for treatment to address mental health issues and trauma related to the loss of his brother. Pl.'s Resp. MSJ 13. Although Plaintiff's therapists noted that C.M. allegedly placed Plaintiff at Triumph due to concerns about his behavior and lack of respect, Plaintiff asserts that any "maladaptive behavior patterns were *because of* his mental health impairments." *Id*. at 15, 27 (emphasis in original).

Once again, Plaintiff's causation arguments are merely a repetition of those put forth in his earlier motions for injunctive relief. During that time, Plaintiff argued that a causal connection existed because he "would not have required a year-long stay at a treatment center" in the absence of his disabilities. Pl.'s Mot. Prelim. Inj. 18, ECF No. 15. However, the Court disagreed and held

10 – OPINION AND ORDER

that Plaintiff's attendance at Triumph was instead due to C.M.'s decision to enroll him at a school better equipped to address his behavioral, emotional, and mental health concerns:

> The Court is sympathetic to the tragedy and trauma Plaintiff has suffered in his young life. But Plaintiff's history of being provided accommodations at school, as well as the evaluation team's statements that his disabilities are adequately addressed by his 504 plan and other educational supports without the need for an IEP, show that Plaintiff was not unable to meet the eight-semester rule due to his disabilities. Rather, based on an apparent combination of behavioral and emotional concerns, Plaintiff's parent chose to enroll Plaintiff at a school that she believed could more adequately meet Plaintiff's needs.

Prelim. Inj. Order 5.

The crux of the issue lies in whether Plaintiff's attendance at Triumph was necessary due to his disabilities. While the record includes ample facts highlighting the benefits of Triumph's therapeutic services for Plaintiff's needs, there is a material difference between benefitting from services and requiring them.

Viewing the facts in light most favorable to Plaintiff, C.M. became increasingly concerned when Plaintiff exhibited maladaptive behavior following his brother's traumatic death. Pl.'s Resp. MSJ 5. Drawing on her experience as a parole officer, her independent research, consultations with professionals who had not treated Plaintiff, and her assessment of Plaintiff's progression in therapy, C.M. concluded that a temporary transfer to Triumph was a solution "for his well-being." Brague Decl. Ex. 2, at 15. Notably, Plaintiff's therapist, prior to his enrollment, never recommended Triumph or other programs with similar services. *Id*. at 13-14. Likewise, there is no evidence in the record sugging that Plaintiff's first school, Marist, was ill-equipped or unable to address his disabilities. As the Court previously explained when denying Plaintiff's Motion for Preliminary Injunction:

> The record further reveals that Plaintiff's disabilities were addressed by each of his schools before, during, and after his time at Triumph through a 504 plan (or its

11 – OPINION AND ORDER

equivalent). These accommodations included allowing fewer assignments with additional time for completion, modeling approaches to organizing information, and permitting breaks for emotional regulation. An evaluation team at Plaintiff's school determined that an IDEA evaluation for special education eligibility and an IEP was unnecessary as "existing data [sufficiently] rule[d] out a suspicion of any educational disability that may require special education at this time." The team agreed that Plaintiff's stress and anxiety "could be effectively addressed via general education supports that have been, and remain, available" to Plaintiff. The team further noted that Plaintiff "never exhibited concerning behavior . . . in the academic setting."

Prelim. Inj. Order 4-5 (citations omitted).

Plaintiff further argues that the ADA requires reasonable accommodations not only for the disability itself but also for disability-related needs. Pl.'s Resp. MSJ 36. But the cases Plaintiff cites are inapplicable to the facts at hand. In *Humphrey v. Mem'l Hosps. Ass'n*, the Ninth Circuit held that a leave of absence for medical treatment may be a reasonable accommodation under the ADA. 239 F.3d 1128, 1135 (9th Cir. 2001). However, *Humphrey* was an employment discharge case, not a failure to accommodate case. Additionally, the plaintiff in *Humphrey* was terminated because of performance inadequacies resulting from her disabilities, and a leave of absence would have remedied those inadequacies. *Id*. at 1140. The same cannot be said for Plaintiff, who never took a leave of absence from any of his schools. Plaintiff also cites *Buckingham v. United States.*, asserting that reasonable accommodations may be required for an individual to pursue treatment or therapy for their disability. 998 F.2d 735, 743 (9th Cir. 1993). However, while *Buckingham* does use that language (albeit it, in the employment context), the next sentence of the opinion explains that the plaintiff "must show that . . . there is a causal connection between his handicap and his need for the requested accommodation[.]" *Id*. No reasonable juror would be able to find such a causal connection in Plaintiff's case today.

## CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 59) is GRANTED.[1]

IT IS SO ORDERED.

DATED this 13th day of May, 2024.

                                                                                              /s/ Michael J. McShane
                                                                                   Michael McShane
                                                                        United States District Judge

---

[1] Plaintiff's state law claims, like Plaintiff's Title II claims, are evaluated under a simple 'but-for' causation standard. Or. Rev. Stat. § 659.850(1)(a)(A) ("'Discrimination' means any act that unreasonably differentiates treatment, intended or unintended, or any act that is fair in form but discriminatory in operation, either of which *is based on* . . . disability.") (emphasis added); Or. Rev. Stat. § 659A.142(4) ("It is an unlawful practice for any place of public accommodation, . . . or any person acting on behalf of such place, to make any distinction, discrimination, or restriction *because* a customer or patron is an individual with a disability.") (emphasis added). Because Plaintiff cannot establish a causal connection between his disabilities and his ineligibility under Defendant's eligibility policy, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's state law claims.

13 – OPINION AND ORDER