Shenoa L. Payne, OSB 084392
Shenoa Payne Attorney at Law PC
1500 SW First Ave., Ste. 1000
Portland, Oregon 97201
Tel: (503) 914-2500
spayne@paynelawpdx.com

Kevin C. Brague, OSB 050428
Brague Law Firm
4504 S. Corbett Ave., Ste. 250
Portland, Oregon 97239
Tel: (503) 922-2243
kevin@braguelawfirm.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Eugene Division)

| | |
|---|---|
| **PLAINTIFF**, <br><br> Plaintiff, <br><br> v. <br><br> **OREGON SCHOOL ACTIVITIES ASS'N**, an Oregon Corporation, by and through the **BOARD OF DIRECTORS OF OREGON SCHOOL ACTIVITIES ASS'N,** <br><br> Defendant. | Case No.: 6:22-CV-01228-MTK <br><br> **PLAINTIFF'S TRIAL MEMORANDUM** |

## I.    INTRODUCTION

Plaintiff sought a fifth year of academic eligibility from defendant Oregon School

Activities Association (OSAA) as a reasonable accommodation after he spent a year of high

school in a residential mental-health treatment facility, necessitating a fifth year of high school.

Page 1 – PLAINTIFF'S TRIAL MEMORANDUM

Defendant OSAA denied his request because plaintiff did not meet OSAA's existing criteria for providing fifth-year hardship eligibility waivers, without considering whether it could provide plaintiff a reasonable accommodation under the ADA or Oregon law. Plaintiff brings three claims for relief: (1) a disability discrimination claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, (2) disability discrimination in violation of Oregon's Public Accommodations Act, ORS 659A.142(4); and (3) education discrimination based on disability, ORS 659.850.

## II.    STATEMENT OF FACTS

Defendant has an eight-semester rule that limits eligibility for participation in interscholastic activities to eight consecutive semesters after entering the ninth grade. OSAA has express exceptions to its eight-semester eligibility rule and sets forth a procedure to seek a fifth-year hardship waiver. OSAA allows for a fifth-year hardship waiver for a subsect of students who meet the definition of disability under the Individuals with Disabilities Education Act (IDEA) if: (a) the student's Individualized Education Program (IEP) Team has determined that the student has a disability as defined under IDEA, and (b) and the student was meeting the requirements of the student's IEP, yet was unable to graduate from high school within eight semesters after entering the 9th grade primarily because of the disability. OSAA limits waivers to students with disabilities only if they have an IEP. OSAA does not make *any reasonable accommodations or modifications* to its eight-semester rule for students who have qualified disabilities under the ADA.

Plaintiff David Manstrom was adopted from Ethiopia when he was about four years old. His adoption at this age caused relinquishment trauma and affected his interpersonal connections and behaviors. Tragically, plaintiff's older brother died by firearm suicide while plaintiff was in

Page 2 – PLAINTIFF'S TRIAL MEMORANDUM

the seventh grade. His brother's death caused him extreme pain and grief. As a result of his brother's death, plaintiff's middle school agreed to combine his seventh and eighth grade, which allowed him to enroll a year early as a freshman at Marist High School. Plaintiff's trauma from his brother's death led him to struggle and caused him to repeatedly engage in self-sabotaging behaviors, including angry outbursts, lying, stealing, impulsivity, emotional dysregulation, aggression, poor self-care, and defiance.

As a result, plaintiff ultimately required residential mental-health treatment at New Vision, a summer Wilderness therapeutic program specifically designed to integrate trauma responses. While at New Vision, plaintiff was evaluated by Dr. Harvey, a clinical psychologist, who diagnosed him with several mental health impairments. Dr. Harvey also made specific professional recommendations for therapeutic treatment including continuing out-patient therapy and that if outpatient treatment proved unsuccessful, residential treatment.

Following his residential treatment at New Vision, plaintiff received outpatient therapy at Marist High School through PeaceHealth. Unfortunately, the COVID-19 pandemic negatively affected plaintiff, and his mental-health symptoms increased. Ultimately, plaintiff found that his out-patient therapy was no longer helping him, and plaintiff refused to continue to attend. Plaintiff's mother became extremely concerned for his well-being. She relied upon the advice of plaintiff's treating providers from New Vision and placed plaintiff in a residential mental health treatment program in Utah called Triumph Youth Services ("Triumph"). Plaintiff was a residential patient at Triumph for his entire third year of high school. While at Triumph, plaintiff engaged in weekly individual and group therapy, as well as psycho-social rehabilitative services. During his time at Triumph, plaintiff underwent intensive mental-health therapy. He improved and gained skills to express his emotions and cope with his trauma. While at Triumph, plaintiff

Page 3 – PLAINTIFF'S TRIAL MEMORANDUM

SHENOA PAYNE ATTORNEY AT LAW PC
1500 SW FIRST AVE, STE 1000
PORTLAND, OREGON 97201
(503) 914-2500
www.paynelawpdx.com

was not eligible to play OSAA or UHSAA sanctioned sports and only participated in a limited capacity in Rugby and Labrador Retriever dog field trials, which are not OSAA or UHSAA sanctioned sports.

Following his treatment at Triumph, plaintiff played Varsity football for one year at Sheldon High School and benefited greatly from that participation. Plaintiff bonded with his peers and football for motivation to do well in school. Playing football helped plaintiff build confidence, self-esteem, and coping skills, which he applied in real life.

After returning from Triumph, plaintiff was 16 years old and enrolled at Sheldon High School within the Eugene 4J School District (the District) for the start of the 2021-2022 school year, at which time it was evident that plaintiff had fallen behind and was performing academically below grade level. In turn, Sheldon High School's principal and school counselor determined that plaintiff's classes at Triumph were not rigorous and that plaintiff's academic learning at Triumph was atypical. As a result, the District determined that plaintiff's "previous education and circumstances did not prepare him to meet graduation requirements with his assigned cohort" and for this reason reclassified plaintiff from a 12th to an 11th grader for the 2021-2022 school year, resulting in a fifth year of high school to complete graduation.

On May 12, 2022, Sheldon High School submitted a Fifth-Year Hardship Waiver request on plaintiff's behalf to OSAA. The Fifth-Year Hardship Waiver request included support letters from Sheldon High School coaches and staff, plaintiff's 504 plan, a portion of Dr. Harvey's assessment, letters from his mental-health treatment providers, mental health records, and statements from plaintiff and his mother, all notifying OSAA of his mental-health disabilities and need for accommodation. In addition, plaintiff's mother provided supplemental information to OSAA as part of the request, alerting OSAA that plaintiff was protected under the ADA.

Page 4 – PLAINTIFF'S TRIAL MEMORANDUM

OSAA's Executive Director Peter Weber denied plaintiff's fifth-7ear Hardship Waiver because he did not meet the existing criteria in that *he did not have an IEP*. Mr. Weber did not consider whether plaintiff had a disability under the ADA or whether he could be accommodated under the ADA. Plaintiff appealed to OSAA's Executive Board, and the board denied plaintiff's appeal, adopting Mr. Weber's findings of fact and conclusions.

Plaintiff seeks economic damages under all claims in the form of past and future counseling expenses and noneconomic damages on his state claims.

## III.    ELEMENTS AND DEFENSES OF EACH CLAIM

### Title II of the ADA (42 U.S.C. § 12132)

#### A.    Elements of Plaintiff's Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. Plaintiff raises two theories of discrimination under Title II of the ADA.

#### 1.    Facial Discrimination

Facially discriminatory policies present *per se* violations of Title II of the ADA. *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 733-34 (9th Cir. 1999); Mem Op. at 4-5, *D.M. v. OSAA*, Case No. 24-3143, Dkt. No. 60.1 (9th Cir. Aug 19, 2025). Categorically excluding persons with disabilities from qualifying for services and programs constitutes a facially discriminatory policy. *Lovell v. Chandler*, 303 F.3d 1039, 1052-54 (9th Cir. 2002). To prove his facial discrimination theory under Title II of the ADA, plaintiff must prove:

(1)    The defendant is a public entity; and

Page 5 – PLAINTIFF'S TRIAL MEMORANDUM

(2)  The defendant's rules, policies or procedures categorically exclude qualified individuals with disabilities from receiving the benefits, programs, or services offered by the defendant.

### 2.  As-applied discrimination theory (failure to accommodate)

To recover on the plaintiff's as-applied disability discrimination claim under Title II of the ADA, the plaintiff must prove by a preponderance of the evidence that:

(1)  The defendant is a public entity;

(2)  The plaintiff is an individual with a disability;

(3)  The plaintiff is otherwise qualified to participate or receive the benefit of defendant's services, programs, or activities;

(4)  The plaintiff was excluded from participation in or denied the benefits of the defendant's services, programs, or activities or was otherwise discriminated against by the defendant; and

(5)  The defendant's exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); 42 U.S.C. § 12131(1). Defendant continues to dispute all elements.

Discrimination under Title II of the ADA includes the refusal to make reasonable modifications in policies, practices, or procedures. 28 C.F.R. § 35.130(b)(7)(i). The crux of a reasonable accommodation claims is that a facially neutral policy unduly burdens disabled persons even though such policies are consistently enforced. *McGary*, 386 F.3d at 1266. The purpose of the ADA's reasonable accommodation requirement is to "guard against the façade of 'equal treatment' when particular accommodations are necessary to level the playing field." *Id.* at 1267.

A public entity must provide a reasonable modification to its policies and procedures if (a) it is necessary to avoid discrimination on the basis of disability; or (b) defendant's policies

Page 6 – PLAINTIFF'S TRIAL MEMORANDUM

SHENOA PAYNE ATTORNEY AT LAW PC
1500 SW FIRST AVE, STE 1000
PORTLAND, OREGON 97201
(503) 914-2500
www.paynelawpdx.com

deny people with disabilities meaningful access to its programs or services. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *Payan v. Los Angeles Comm. College District*, 11 F.4th 721, 738 (9th Cir. 2021). Reasonableness "depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to [enjoy meaningful access to the program.]." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010) (brackets in original). A modification is reasonable if it is reasonable on its face – i.e. feasible or plausible. *Id.*; *U.S. Airways v. Barnett*, 535 U.S. 391, 402 (2002). A modification is reasonable if a system already contains exceptions and one further exception is unlikely to matter. *Barnett*, 535 U.S. at 405.

**B.        Elements of Defendant's Affirmative Defense - Fundamental Alteration**

A public entity is not required to make reasonable modifications to its policies, practices, or procedures if doing so would result in a fundamental alteration of the nature of a service, program, or activity. 28 C.F.R. § 35.130(b)(7)(i). A defendant must make an individualized inquiry as to the personal circumstances and needs of the individual with the disability in determining whether providing the requested modification would pose a fundamental alteration. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001). Fundamental alteration is an affirmative defense and OSAA has the burden of proof. *Bingham v. Or. Sch. Activities Ass'n*, 24 F.Supp.2d 1110, 1117 (D. Or. 1998).

### Public Accommodation Disability Discrimination (ORS 659A.142(4))

**A.        Elements of Plaintiff's Claim**

O.R.S. 659A.142(4) provides that "[i]t is an unlawful practice for any place of public accommodation, resort or amusement as defined in O.R.S. 659A.400, or any person acting on behalf of such place, to make any *distinction, discrimination or restriction* because a customer or

Page 7 – PLAINTIFF'S TRIAL MEMORANDUM

SHENOA PAYNE ATTORNEY AT LAW PC
1500 SW FIRST AVE, STE 1000
PORTLAND, OREGON 97201
(503) 914-2500
www.paynelawpdx.com

patron is an individual with a disability." In order for plaintiff to prove his claim under ORS 659A.142(4), plaintiff must prove:

(1)    Defendant is a public accommodation;

(2)    Plaintiff is an individual with a disability;

(3)    Plaintiff is a customer or patron of Defendant; and

(4)    Defendant, or any person acting on behalf of Defendant, made a distinction, discrimination, or restriction because Plaintiff is an individual with a disability.

Defendant continues to dispute all elements.

An individual with a disability is a "customer or patron" if the individual uses the defendant's services, regardless of whether the services are paid for by someone else. *Abraham v. Corizon Health, Inc.*, 369 Or. 735, 511 P.3d 1083 (2022). "Distinction, discrimination, or restriction" under ORS 659A.142(4) "encompasses more than outright denial of service." *King v. Greyhound Lines, Inc.*, 61 Or. App. 197, 202, 656 P.2d 349 (1982). The statute is violated even when a plaintiff is not refused service but *the manner* in which he is served constitutes a "denial of full and equal service." *Id.* at 201. The chief harm to be addressed by the statute is "unequal treatment," which is the injury to an individual's sense of self-worth and personal integrity." *Id.* at 203. *See also Camarillo v. Carrols Corp.*, 518 F.3d 153, 157-58 (2d. Cir. 2008) (even though not denied service by restaurant, plaintiff injured by discriminatory treatment under Title III).

Plaintiff may prove a "distinction, discrimination, or restriction" by establishing that OSAA failed to make reasonable modifications to its policies, practices, and procedures necessary to make defendant's goods and services accessible to plaintiff. OAR 839-006-0030(1)-(2); *Marquard v. New Penn Fin., LLC*, No. 3:17-cv-549-SI, 2017 WL 4227685, *10 (D. Or. Sept. 22, 2017) ("Oregon's antidiscrimination laws require places of public accommodation to make reasonable modifications

Page 8 – PLAINTIFF'S TRIAL MEMORANDUM

to ensure access to their goods and services by those with disabilities"); *see also* 42 U.S.C. §

12182(b)(2)(A) (Title III of the ADA defining discrimination to include the failure to make

reasonable modifications in policies, practices, or procedures when such modifications are

necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to

individuals with disabilities).

Plaintiff may prove that his requested reasonable modifications were "necessary" to access

defendant's goods and services by demonstrating that such modifications would make it easier for

her to access OSAA's goods and services or make hisexperience "less onerous and more akin to that

enjoyed by its able-bodied patrons." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1136

(9th Cir. 2012). Plaintiff need not prove that he "can't do without" his requested modifications. *Id.*

at 1134.

Plaintiff may also prove a "distinction, discrimination, or restriction" by proving that OSAA

provided Plaintiff with an opportunity to participate in or benefit from OSAA's goods or services

that was not *equal to* that afforded to non-disabled persons. 42 U.S.C. § 12182; 29 C.F.R. §

36.202(b). This means that "public accommodations must start by considering how their services

are used by non-disabled guests and then take reasonable steps to provide disabled guests with a *like*

*experience*. *Baughman*, 685 F.3d at 1135; *see also Or. Paralyzed Veterans of America v. Regal*

*Cinemas, Inc.*, 339 F.3d 1126, 1133 (9th Cir. 2003) (public accommodations must provide patrons

with disabilities with an experience *comparable* to that of able-bodied patrons).

**B.      Elements of Defendant's Affirmative Defense – Fundamental Alteration**

A defendant is not required to provide a reasonable accommodation that results in a

fundamental alteration in the nature of the offered goods or services. OAR 839-006-0330(4).

Whether providing the plaintiff's requested accommodation would result in a fundamental

Page 9 – PLAINTIFF'S TRIAL MEMORANDUM

alteration in the nature of the offered goods or services must be determined on a case-by-case

basis. OAR 839-006-0330(4); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001).

Fundamental alteration is an affirmative defense and OSAA has the burden of proof. *Bingham v.*

*Or. Sch. Activities Ass'n*, 24 F.Supp.2d 1110, 1117 (D. Or. 1998).

### Education Discrimination Based on Disability (ORS 659.850)

**A.      Elements of Plaintiff's Claim**

ORS 659.850(2) provides:

> "A person may not be subjected to discrimination in any * * * secondary *
> * * education program or service, school, or interschool activity * * * where the
> program, service or activity is financed in whole or party by moneys appropriated
> by the Legislative Assembly."

In order for plaintiff to prove his claim under ORS 659A.142(4), plaintiff must prove:

(1)      Plaintiff is an individual with a disability;

(2)      The defendant discriminated against the plaintiff on the basis of disability;

(3)      The defendant subjected plaintiff to discrimination in a secondary education
program or service school, or interschool activity that is financed in whole or part by
moneys appropriated by the Legislative Assembly;

(4)      The plaintiff filed a grievance with the defendant's board within 180 days of the
alleged discrimination; and

(5)      Ninety days passed between the filing of the plaintiff's grievance and the filing of
plaintiff's ORS 659A.850 claim.

Defendant continues to dispute all elements.

"Discrimination" under the statute means "any act that unreasonably differentiates in

treatment, intended or unintended, or any act that is fair in form but discriminatory in operation,

either of which is based on * * * disability." ORS 659.850(1)(A). "Fair in form but

discriminatory in operation" means facially neutral practices or policies that have an adverse

Page 10 – PLAINTIFF'S TRIAL MEMORANDUM

SHENOA PAYNE ATTORNEY AT LAW PC
1500 SW FIRST AVE, STE 1000
PORTLAND, OREGON 97201
(503) 914-2500
www.paynelawpdx.com

effect on protected classes, including creating any artificial, arbitrary and unnecessary barriers for a protected group. *Nakashima v. Oregon State Bd. of Educ.*, 344 Or. 497, 185 P.3d 429 (2008). This also includes the failure to provide a reasonable accommodation that would allow the student to participate in the educational program or service. *Id.* at 517-18; *Montgomery v. Bd. of Educ.*, 188 Or.App. 63, 70, 77-79, 71 P.3d 94 (2003).

Discrimination does not include enforcement of an otherwise valid policy, as long as the policy: (i) Provides, on a case-by-case basis, for reasonable accommodation of an individual based on the health and safety needs of the individual; and (ii) Does not have a disproportionate adverse impact on members of a protected class to a greater extent than the policy impacts persons generally. ORS 659.850(1)(B).

## IV.    LEGAL ISSUES FOR THE COURT

Plaintiff and defendant briefed certain legal issues in its pretrial order. Plaintiff does not repeat those issues here, except where needed to expand further. Plaintiff incorporates the briefing in the parties' Pretrial Order herein.

### A.    Whether defendant is a public entity subject to Title II of the ADA

This Court should decide as a legal issue whether defendant is a public entity and subject to Title II unless it finds that there are disputed factual issues to be resolved by a jury.

Defendant argues that it is not subject to Title II of the ADA and is not a public entity. Every Court to consider the issue in Oregon has determined that OSAA is a state actor and so intwined with the state as to be a state actor. *See Bingham*, 37 F.Supp.2d at 1194 (OSAA is a public entity subject to Title II of the ADA); *Josephine Cty. School Dist v. OSAA*, 15 Or.App. 185, 195, 515 P.2d 43 (1973); *Cooper v. OSAA*, 52 Or.App. 425, 429-30, n. 6, 629 P.2d 386, 389 (1981) (holding that because school districts confer authority on OSAA to operate as an agent for

Page 11 – PLAINTIFF'S TRIAL MEMORANDUM

SHENOA PAYNE ATTORNEY AT LAW PC
1500 SW FIRST AVE, STE 1000
PORTLAND, OREGON 97201
(503) 914-2500
www.paynelawpdx.com

the member schools, OSAA is an agent of its member schools and subject to statutes which regulate school districts).

Defendant nonetheless relies on an unpublished memorandum opinion decision, *Fenimore v. Lane Cty.*, 2024 WL 3250638, *1 (9th Cir. 2024) (unpublished) where a panel of the court "assumed" without deciding that the Department of Justice's Title II Technical Assistance Manual was persuasive authority for determining that an association is a public entity. The Ninth Circuit, however, has not adopted those factors.

This Court should find more persuasive the Ninth Circuit's holding in *Clark, By and Through Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126, 1128 (9th Cir. 1982), where the Court held that the Arizona Interscholastic Association was so intertwined with the state that their actions were considered state action because the association was made up entirely of private and public high schools, school administrators and coaches represented the members schools on the advisory committees, and the delegates were elected by the member schools and further noting that "[e]very court to consider the question has concluded that associations like the AIA are so intertwined with the state that their actions are considered state action." Even though the Court was looking to whether the AIA was an instrumentality of the state for purposes of the equal protection clause, there is no meaningful difference in the analysis.

Here, defendant's executive director Peter Weber will testify consistent with his deposition that when OSAA was created the members schools voluntarily delegated their authority to OSAA to regulate rulemaking to athletic and other school activities and that by joining OSAA, and that absent delegating their authority to OSAA, public schools would otherwise be regulating their own athletics and school activities. The governing bodies of the OSAA are also primarily made up of administration and employees of the public schools

Page 12 – PLAINTIFF'S TRIAL MEMORANDUM

SHENOA PAYNE ATTORNEY AT LAW PC
1500 SW FIRST AVE, STE 1000
PORTLAND, OREGON 97201
(503) 914-2500
www.paynelawpdx.com

themselves. This is exactly what makes OSAA a public entity and so intertwined with the state that their actions are considered state action.

Defendant argues that it is not a public entity because in 2011, the legislature changed its relationship with the Oregon Department of Education. However, the only thing that changed is that final decisions by the OSAA are no longer subject to administrative review by the Oregon Department of Education. *See* Senate Bill 800 (2011) (repealing ORS 339.430, which required administrative review by the Oregon Department of Education). That legislative amendment did not meaningfully change the relationship between OSAA and the public schools or the delegation of authority.

B.      **Whether defendant is a public accommodation subject to ORS 659A.142**

For much of the same reason, defendant is subject to ORS 659A.142 as a public body that provides a service to the public. ORS 659A.400(1)(c). A public body includes a special government body. ORS 174.109. A special government body includes school districts and "an intergovernmental body formed by two or more public bodies." As the evidence will demonstrate, OSAA is comprised of member schools which include public schools, and its governing bodies – its delegate assembly and executive board, are governed by members of public schools. If defendant does not meet the definition of a public body, plaintiff may still prove that defendant is a public accommodation under ORS 659A.400(1)(a).

C.      **Whether defendant is subject to ORS 659.850**

Defendant contends that it is not subject to ORS 659.850 because it does not directly receive moneys appropriate by the legislature. Plaintiff contends that the statute prohibits discrimination by *anyone* in a high school program or activity if that program or activity is financed by the state. *See also Powell v. Bunn*, 341 Or. 306, 314 & 314 n. 8, 142 P.3d 1054

Page 13 – PLAINTIFF'S TRIAL MEMORANDUM

SHENOA PAYNE ATTORNEY AT LAW PC
1500 SW FIRST AVE, STE 1000
PORTLAND, OREGON 97201
(503) 914-2500
www.paynelawpdx.com

(2006) (holding that even community groups may not discriminate against any person in any secondary school or interschool activity, because wording of statute is whether someone is "'subject to discrimination' in a public school program, service or activity, *irrespective of who is doing the discriminating*" (emphasis added)).

Even if plaintiff must prove that OSAA *itself* received moneys appropriated by the legislature, OSAA receives dues from its member schools, which include public schools. OSAA does not have to itself directly receive the money from the legislature. *C.f. Dennin v. Interscholastic Athletic Conference, Inc.*, 913 F.Supp. 663, 668 (D. Conn.), *vacated on other grounds*, 94 F.3d 96 (2nd Cir. 1996) (holding that athletic association was subject to Section 504 of the Rehabilitation Act through receipt of federal funds that it received through the fees paid by public schools).

### D.    Whether plaintiff satisfied the grievance provision of ORS 659.860.

ORS 659.860(3) provides:

> An action may not be filed unless, within 180 days of the alleged discrimination, a grievance has been filed with the school district board, public charter school governing body, community college board of education or governing board of a public university listed in ORS 352.002.

Plaintiff made allegations in the FAC that plaintiff timely filed a grievance with defendant's board and defendant admitted that allegation. FAC ¶ 63; Def. Ans. & Aff. Def. FAC ¶ 63. Defendant now contends for the first time, however, that plaintiff failed to meet the statutory requirement because plaintiff must have filed a grievance with *the school district* board, and not the OSAA Executive Board.

Here, plaintiff alleges that OSAA is an agent of the school districts and that OSAA is subject to the statutes regulating school districts, including but not limited to ORS 659.850. FAC

Page 14 – PLAINTIFF'S TRIAL MEMORANDUM

SHENOA PAYNE ATTORNEY AT LAW PC
1500 SW FIRST AVE, STE 1000
PORTLAND, OREGON 97201
(503) 914-2500
www.paynelawpdx.com

¶ 59. The public school districts voluntarily delegated their authority to OSAA to regulate athletics and to determine athletic eligibility and that without that delegation, OSAA would have no authority to regulate athletics as that authority would lie with the school districts. As an agent of OSAA who has been given that authority by the school districts, OSAA's Executive Board was the proper board with which to file his grievance regarding OSAA's decision to deny him a fifth year of eligibility as a reasonable accommodation. The notice purpose of the statute clearly has been met.

Even if plaintiff was required to submit a grievance *the school district* board, such action would have been futile. Plaintiff had no grievance with the school district. The school district was not the subject of plaintiff's complaints – here, it was OSAA's conduct that was at issue. In fact, employees of the District *supported* plaintiff's request for a fifth-year hardship waiver and assisted plaintiff at every stage of his request for accommodation, including his waiver request, his appeal to the executive board, and his appeal to the OSAA hearings officer. Therefore, the OSAA Executive Board stood in the shoes of the school district, which had delegated its authority to make decisions related to athletic eligibility, and was the proper board in which to submit a grievance.

DATED this 15th day of May, 2026.

/s/ Shenoa Payne
Shenoa Payne, OSB 084392
Shenoa Payne Attorney at Law PC
1500 SW First Ave, Suite 1000
Portland, OR 97201
(503) 914-2500
spayne@paynelawpdx.com

Page 15 – PLAINTIFF'S TRIAL MEMORANDUM

/s/ Kevin Brague
Kevin C. Brague, OSB 050428
Brague Law Firm
4504 S. Corbett Ave., Ste. 250
Portland, Oregon 97239
Tel: (503) 922-2243
kevin@braguelawfirm.com

*Attorneys for Plaintiff*

Page 16 – PLAINTIFF'S TRIAL MEMORANDUM